[Sac. No. 4484. In Bank.—July 14, 1931.]

RUSSELL F. O'HARA et al., Respondents, v. GRAND LODGE OF THE INDEPENDENT .ORDER OF GOOD TEMPLARS OF THE STATE OF CALIFORNIA (a Corporation), Appellant.

F. W. Sawyer for Appellant.

C. H. Sooy and H. A. Frank for Respondents.

THE COURT.—This action was brought by O'Hara, the purchaser of certain described real property in Solano County, and by the Good Templars Home for Orphans, the seller of that land, as plaintiffs, against the Grand Lodge of the Independent Order of Good Templars of the State of California, as defendant, for the purpose of securing a decree of the superior court confirming the sale, and a determination that defendant corporation has no interest in the real property involved.

The complaint alleges, in part, that the plaintiff corporation is a California corporation, organized in December, 1897; that about that date such corporation became the owner, as trustee, of part of the lands herein involved; that the purpose of such trust was to acquire a tract of land and operate thereon an orphanage; that on the thirteenth day of June, 1919, the Home for Orphans, conducted by plaintiff corporation under the terms of the trust, was closed and abandoned; that said home was abandoned for the reason that the plaintiff corporation was unable to acquire or secure sufficient sums of money properly to or at all conduct a home for orphans thereon; that the buildings of the orphanage had become so obsolete that rebuilding and remodeling had become necessary, at an expense which was prohibitive to plaintiff corporation; that for five years next preceding the closing of the orphanage very few orphans had applied for admission to the institution, until, in 1919, only two full and two half orphans were being cared for therein; that there was no longer any need for an orphans' home such as plaintiff corporation had been conducting; that the property held by plaintiff corporation under the terms of the trust did not, when taken with the other assets and property of such corporation, yield a sufficient income to carry on or conduct the home; that the real property involved at the time of sale, was of the reasonable value of $17,000; that after the closing of said home in 1919, the income from said property did not amount to the gross sum of $2,000, from which sum all expenses had to be paid.

It is further alleged that, prior to January 14, 1927, it had become apparent to plaintiff corporation that it could not then or in the future conduct an orphans' home; that on that date the plaintiff corporation duly authorized a sale of the property to certain parties by the names of D. Brosnahan and Carlos B. Rookwood, in accordance with certain terms and conditions set forth in the deed; that, on February 29, 1928, the grantees in said deed did convey and sell to plaintiff Russell F. O'Hara, by quitclaim deed, the interest of said grantees in the real property involved herein; that defendant corporation has objected to the sale of said property and has claimed an interest therein adverse to the interests of plaintiffs; that the claim of defendant is without foundation; that plaintiff O'Hara has paid to plaintiff corporation,

as and for the purchase price of said property, the sum of $8,500 in cash, and has given his promissory note in a like sum, which note draws interest at the rate of seven per cent, and which note is secured by a first mortgage on the property; that the sale to plaintiff O'Hara was made in good faith and for the best interests of the trust.

In the prayer of their complaint, plaintiffs ask that the sale be confirmed; that the defendant corporation be decreed to have no interest in the land, and for other and further relief.

The deed from plaintiff corporation to Brosnahan and Rookwood is attached to the complaint as an exhibit. Among other things, the deed provides that, in addition to the payment of $17,000, the purchasers will pay ''all expenses in connection with said transfer, including court expenses and pending litigation . . . it being understood, however, that said sale shall be made subject to confirmation by the Superior Court of Solano County, California, and that the purchaser or purchasers shall pay all costs of transfer, including any court expenses and expenses of litigation pending or that may be hereafter commenced, necessary to perfect title to said property, or to procure the transfer of a good title to the purchaser or purchasers''.

Defendant, in its answer, alleges that it was first organized as an unincorporated association September 9, 1850, and that it was incorporated October 4, 1876; admits that the orphans' home was closed in 1919, but denies that it was closed for the reasons alleged in the complaint, and alleges that said home was closed because of its mismanagement by plaintiff corporation.

As a separate defense, defendant corporation alleges that all during its existence said corporation has been engaged in the performance and the carrying out of its purposes, one of which was to erect, maintain and endow an orphans' home near Vallejo; that defendant corporation is the parent and grand lodge and that plaintiff corporation is a subordinate lodge; that the movement for the erection and maintenance of the orphans' home was first started in 1867 by levying a tax of one dollar per member on all members of the lodge; that sufficient money was so collected by that means and by donations to purchase a site for such purposes; that a site for said orphans' home was purchased with the funds so

collected, such site being the lands herein involved; that the title to said lands was taken in the names of three trustees (defendant not then being incorporated), who thereafter held the property in trust for defendant; that, in 1868, defendant subdivided part of the lands herein involved, twenty (20) acres of the same being specially set apart for the sole purpose of a site for said home, the remainder to be sold, the proceeds to be used to construct the orphanage, and to maintain the same; that, for the purpose of carrying out this plan, defendaint incorporated a sales corporation known as the Orphans' Homestead Association, and caused the trustees to convey all of the real property to said corporation; that said Orphans' Homestead Association, on December 30, 1868, deeded the twenty acres reserved for the orphanage to certain named trustees, under the terms of an express trust expressed in the deed of conveyance to said trustees, and which trust is pleaded *in haec verba,* and which, among other things, provided that said trustees held the property in trust for defendant ''for the purpose of a site for an Orphans' Home and its necessary appurtenances, and for the perpetual maintenance of said Orphans' Home and the support and education of its inmates and for no other purpose''; the remaining portions of said lands (about 152 acres) were subdivided and sold by the Orphans' Homestead Association, all funds thus received being placed in a trust fund for the erection and maintenance of an orphans' home; that the purchasers reconveyed the land back to this corporation for trust purposes; that, in 1871, the trustees conveyed the title to the twenty acres back to defendant; that for the greater convenience and better protection of all of said land, and for the purpose of better carrying out the provisions of the trust, defendant caused to be incorporated plaintiff corporation; that, thereupon, defendant conveyed to plaintiff corporation all of the property herein involved, said plaintiff corporation agreeing to live up to and abide by the terms and conditions of the trust; that at all times this defendant has been and still is ready, able and willing to carry out and perform the trust, but that plaintiff corporation refuses to permit defendant so to do, and has attempted to sell said property in violation of the trust; that, prior to this attempted sale, both plaintiffs had full and actual knowledge of all the terms and conditions of said trust.

It is further alleged that this action must abate, for the reason that on February 4, 1925, this defendant commenced an action against plaintiff corporation in the Superior Court of Solano County, in which action this defendant has claimed the sole ownership of the entire estate and property involved herein; that a notice of *lis pendens* was filed; that said action is still pending; that plaintiffs knew this fact; that the subject matter of the two actions is identical.

It is also alleged that this action must abate because of the fact that there is now pending another action commenced in 1927 by defendant against plaintiff corporation and others in the Superior Court of the City and County of San Francisco, wherein this defendant has asked for a decree canceling the conveyances set forth in plaintiff's complaint, for an accounting and for a decree terminating the trusts and for a reconveyance of the properties.

After a trial before the court without a jury, the court caused a judgment to be entered in favor of plaintiffs. The trial court found that the history of the acquisition of the property and its several transfers were substantially as set forth in the answer; that the plaintiff corporation held the property as trustee ''for the sole purpose of locating and establishing an Orphans' Home thereon'', and ''to forever maintain an Orphans' Home'', and ''to have and to hold for the sole purpose of a site for an Orphans' Home and its necessary appurtenances and for the perpetual maintenance of an Orphans' Home and the support and education of its inmates, and for no other purpose''; that the home had been abandoned in 1919 for the reasons set forth in the complaint; that the reasonable value of the property was $17,000; that the circumstances leading up to the sale of the property to Brosnahan and Rookwood, and its subsequent transfer to O'Hara, were substantially as set forth in the complaint; that ''the sale of the said land to plaintiff O'Hara and his assigns was made in good faith, and for the best interests of the trust of plaintiff corporation''; that it is not true that plaintiff corporation's only claim to the real property involved was as trustee for defendant corporation; that it is not true that plaintiff corporation was incorporated by defendant corporation for the sole purpose of greater convenience in carrying out the trust, but that plaintiff corporation was incorporated so that it

might take over the land and pay a consideration therefor, and that the consideration to be paid and that was paid was that plaintiff corporation should pay certain debts of defendant corporation amounting to $10,000; that it is not true that defendant corporation is ready, able or willing to perform the trust; that defendant corporation, since 1898, has been gradually shrinking in size and membership, so that, in 1919, it had less than 600 members and a total income of less than $1,000; that defendant corporation is financially unable and without means to operate the Orphans' Home; that defendant knew of the closing of the home in 1919 and made no objection thereto; that "it is true that the objects of the trust had become and were impossible prior to the said 13th day of June, 1919".

As its conclusions of law, the trial court held:

1. That defendant is estopped to question the validity of the right of plaintiff corporation to have closed the home in 1919, and is estopped to deny the right of plaintiff corporation to the full control and right to control the lands herein involved, by reason of defendant's laches and delay in objecting thereto.

2. That the sale of the land to plaintiff O'Hara should be and is affirmed.

3. That defendant corporation is hereby decreed to have no right, title or interest in and to the real property.

From the judgment entered in accordance with the above findings and conclusions, defendant prosecutes this appeal.

At the trial defendant sought to show that plaintiff corporation was a mere subsidiary of defendant, and no more than an agent or trustee for defendant corporation, and that it had mismanaged the trust. These matters were thoroughly gone into on the trial, and, on conflicting testimony, found adversely to appellant, and, for that reason, cannot be considered on appeal.

There can be no doubt of the correctness of the trial court's finding that plaintiff corporation did not hold the property in trust for defendant. The evidence tended to show that defendant corporation, during its period of prosperity, acquired the land herein involved in trust for the purpose of establishing and maintaining an orphans' home thereon; that, faced with the decrease in its membership and consequent loss of income, it sold the lands to

plaintiff corporation, subject to the trust, for the sum of $10,000; that in this deed of conveyance no reversionary interest was retained by defendant. The trust for an orphans' home was undoubtedly a charitable trust, it having been collaterally so held in *Estate of Upham*, 127. Cal. 90 [59 Pac. 315]. Defendant was not even the donor or creator of this trust, in the ordinary sense, having secured the money with which the land was purchased by a levy on the members of the lodge and by donations, and thereupon became trustee for those donating the money.

However, even if defendant be treated as the creator of this trust, it does not appear what standing it has in this action to claim any interest in the real property. .Defendant parted with its entire interest in the property for a valuable consideration, subject to the trust, and retained no reversionary interest therein. Under such circumstances, it has no standing in a court of equity, except as a relator, to attempt to compel the proper execution of the trust, or to claim any interest in the trust property. ■ The law is well settled that when property has become fully vested in trustees for a valid charitable purpose, neither the creator of the trust nor his heirs or assigns have any standing in court in a proceeding to compel the proper execution of the trust, except as relators. (Perry on Trusts, 7th ed., p. 1255, sec. 732–A.) In *Clarke* v. *Oliver*, 91 Va. 421 [22 S. E. 175, at page 176], the rule is stated as follows:

"The contributors to this fund parted with their interest in it, and when it was paid their control over it ceased. They are not described as persons belonging to the class intended to be benefited by the application of the fund. The money was devoted to a charitable use. As we have said, the whole interest of the donors was divested. There remained in them no scintilla of right. How, then, can they be heard in a court of equity with respect to the disposition of it? ■ There is no such thing as a resulting trust with respect to a charity. Where a fund has been devoted to a charity, which, if the charity fails, will go to others, those persons having hostile interests may, of course, assert any claim they may have in the subject and show that the charitable use has for any cause failed and become inoperative and void; but, where the donor has effectually passed out of himself all interest in the fund devoted to a

charity, neither he nor those claiming under him, have any standing in a court of equity as to its disposition and control.''

In other words, the only person who can object to the disposition of the trust property is one having some definite interest in the property—he must be a trustee, or a *cestui*, or have some reversionary interest in the trust property. In the instant case, there is more than sufficient evidence to sustain the trial court's finding that defendant has no right, title or interest in the property. At most, defendant is the creator of the trust, who for a valuable consideration, has parted with its entire interest in the trust property. Under such circumstances, it would appear that defendant has no standing in court, except as a relator, to object to the disposition of the trust property. In addition to the authorities cited, *supra*, see *Women's Christian Assn.* v. *Campbell*, 147 Mo. 103 [48 S. W. 960, 967]; *In re Burnham*, 74 N. H. 492 [69 Atl. 720, 721]; *Mackenzie* v. *Trustees of Presbytery of Jersey City*, 67 N. J. Eq. 652 [110 Am. St. Rep. 506, 3 Ann. Cas. 804, 61 Atl. 1027, 1038].

Assuming, however, that defendant corporation could object to the confirmation of the sale, and that, therefore, the validity of the trial court's order is involved on this appeal, we are of the opinion that the trial court properly confirmed the sale of the trust property. Appellant seems to be of the opinion that confirmation of the sale will result in the termination of the trust. Such is not the fact. This proceeding is merely a step in carrying out the general purpose of the trust, the particular means specified in the trust instrument having failed. The law has long been well settled that the trial court, sitting as an equity court, has the power, when the method for carrying out a charitable trust provided for in the trust instrument has become inadequate or impossible, to empower the trustees to carry out the general charitable purpose in another or different fashion. In the instant case, the creator of the trust specified that the trust should be carried out by the maintaining of an orphans' home, but that method of carrying out the general charitable purpose of aiding and assisting orphans and half orphans has become reasonably impossible of performance, due to a change in conditions not foreseen at the time of the creation of the trust. In such a case, it

becomes the duty of the equity court to construe the trust instrument in view of all the circumstances, and, if a general charitable purpose be ascertained, to apply the trust fund to the carrying out of that general purpose, even though so to do requires a change in the method or means specified in the trust instrument. This doctrine, frequently referred to as the *cy pres* doctrine, is in reality a mere matter of construction. ▮ In determining whether there has been expressed a general charitable intent, the trust instrument is always construed most strongly against the trustor, for the reason that the courts favor charities. Once it has been determined that the creator of the trust had a general charitable purpose, the courts will presume that the creator of the trust did not desire the trust to fail. Examples of the application of the doctrine are numerous. A leading case in this country, reviewing the early authorities, is *Jackson* v. *Phillips*, 14 Allen (Mass.), 539, in which case there was involved a bequest to trustees to be expended in a specified fashion to create a sentiment for the abolishment of negro slavery in the United States. After slavery had been abolished, the court found a general charitable purpose for the benefit of the negro race, and applied the funds for the purpose, as nearly as possible, of carrying out that intention. (See, also, Perry on Trusts, 7th ed., p. 1233, sec. 724 et seq.) The doctrine has repeatedly been recognized in California. (See 5 Cal. Jur. 15, sec. 10.)

In the present case the facts and circumstances surrounding the creation of this trust were more than sufficient to indicate a general charitable intent to benefit orphans. The proceedings of the meetings of the Grand Lodge, the manner in which the money was collected, the absence of a reversionary clause in the trust deed, all indicate a general charitable intent to benefit orphans. It is true that it was specified in the trust instrument that this purpose should be accomplished by the creation and maintenance of an orphans' home, but that means of carrying out the intention of the creator of the trust has become reasonably impossible, because of changed conditions not foreseen at the time of the creation of the trust. Under such circumstances, it is the clear duty of the equity courts to permit the trustees to carry out the general trust purpose by selling the land, and using the fund thus acquired for some cognate purpose.

Appellant complains that the sale of the land, under the conditions here existing, comes directly within the terms of section 870 of the Civil Code, which provides:

"Where a trust in relation to real property is expressed in the instrument creating the estate every transfer or other act of the trustees, in contravention of the trust is absolutely void."

This section has no application to the facts of this case. The sale here involved is not "in contravention of the trust", but, for the purpose of carrying out the terms of the trust, and making it effectual in a manner different from that originally contemplated, but within the presumed intention of the creator of the trust, as determined under the principles discussed, *supra*. In *Alemany* v. *Winsinger*, 40 Cal. 288, a particular property had been donated for church purposes, and was found to be unsuited therefor. The court ordered a sale, in order that suitable property might be purchased, stating at page 292:

"The principal purpose intended by the donors was to provide 'a Roman Catholic Church for the German Congregation of the City of San Francisco'. As a means to this end the lot on Sutter street, near Montgomery, was selected, and at the time of the selection it was suitable or at least not inappropriate for that purpose. Subsequent events, not then anticipated, and therefore not expressly provided for by the donors, have already practically defeated the scheme of the original donation. Hotels and business houses and places of public resort have grown up in close proximity to the property. A variety of circumstances, the results of the unforeseen growth of a populous city beyond and around the premises have, as found by the Court below, rendered this lot 'unsuitable as a site for an edifice for religious worship'. These circumstances have, at the same time, greatly enhanced its value in the market, and it appears that a sum can be obtained for it which will be sufficient, after paying off the indebtedness of the church, to purchase a suitable lot in the city and erect thereon an edifice proper for the accomplishment of the original design of the donation. The Court below directed, under these circumstances, a sale of the premises and a reinvestment of the proceeds of the sale in furtherance of the objects of the trust. We see no error in the general scope of the decree.

It cannot be said to have displaced or interfered with the original trust for that, so far as the particular premises are concerned, had already been practically defeated by the circumstances before adverted to. The decree in its effect reestablishes the trust as far as possible, and provides the only means by which the intent of the donors may be executed and carried into substantial effect."

The rule therein enunciated was in no way changed by the adoption of section 870 of the Civil Code.

In such cases, the better practice is to petition the equity court for permission to sell the property, before consummating the sale. In the instant case the trustee first sold the property, subject to confirmation, and now seeks approval of the acts performed by it.

The rule is well settled that where an equity court, on proper application, would have ordered a sale, it will not cause a sale to be undone that has been arranged by the trustee, in order that the court itself may order the sale. The principle was thus stated in the early case of *Newark* v. *Stockton*, 44 N. J. Eq. 179 [14 Atl. 630, at page 637] :

"It seems to us plain that, under the conditions presented, the chancellor, if he had been properly applied to, would have been bound to permit the designed transmutation of this property. And, if this be so, then the injunction should not have been issued; for the court will not enjoin the act of a trustee of a charitable use which itself would have directed to be done had the case been before it. Such a trustee may alienate the trust property, but he will do such act at the peril of his conduct being disapproved of by the court of chancery. On this head, the case of *Attorney-General* v. *South Sea Co.*, 4 Beav. 453, is an illustration. Eight messuages were conveyed to trustees, the rents to be applied, by way of certain charitable uses, for the poor of the parish. The trustees leased these properties for 99 years to the South Sea Co., and this was complained of as a breach of trust. But Lord Langdale, defining the power and duty of a trustee of this class, says: 'It is plain that, in ordinary cases, a most important part of this duty is to preserve the property; but it may happen that the purposes of the charity may be best sustained and promoted by alienating the specific property. The law has not forbidden the alienation; and this court, upon various occasions, with a view to pro-

mote the permanent interests of charities, has not thought it necessary to preserve the property *in specie,* but has sanctioned its alienation.' And after remarking that the trustees may do, at their own risk, what the court would have done under the circumstances, and deeming the alienation made by the trustees, on the whole, beneficial, he dismissed the bill. This, we think, should have been the course in the present case. The chancellor, even on the theory adopted by him, that this charity was not subject to legislative control, should not have enjoined municipal authorities from doing the act contemplated by them, inasmuch as, if the case had been before him, he would have been constrained, by the force of a principle of equity that is not open to question, to have directed the doing of this same act.''

(See, also, *City of Tacoma* v. *Tacoma Cemetery,* 28 Wash. 238 [68 Pac. 723].)

The pendency of the two actions pleaded in defendant's answer could not have the effect of abating this action, for the reason that it appears from the face of defendant's pleading that in those actions the parties and issues are different from those here involved.

It is usual in decrees ordering or directing sales of trust property to direct the disposition of the proceeds of the sale. It was not done in this case, the parties stating in open court that a receiver had been appointed in the San Francisco action heretofore mentioned, and that the money received from the sale would be paid over to him until it was determined in that action how much proceeds should be disposed of. For the protection of all concerned, this should have been part of the judgment in this case. It is, therefore, ordered that all proceeds from the sale of this land be held by plaintiff corporation or turned over to the receiver in the San Francisco action, to be held by him or it in trust until that court, or some other court, in a proper action, orders its disposition.

As thus modified, the judgment appealed from is affirmed.