[S. F. No. 16839. In Bank. Aug. 18, 1944.]

W. R. GRACE & COMPANY (a Corporation) et al., Petitioners, v. CALIFORNIA EMPLOYMENT COMMISSION et al., Respondents; FRANK ABELLEIRA et al., Interveners and Respondents.

722

Brobeck, Phleger & Harrison and Gregory A. Harrison for Petitioners.

Earl Warren, Attorney General, Robert W. Kenny, Attorney General, John J. Dailey, Deputy Attorney General, Ralph R. Planteen, Maurice P. McCaffrey, Charles P. Scully, Forrest M. Hill, Glenn V. Walls, Gladstein, Grossman, Margolis & Sawyer, Ben Margolis, William Murrish, Gladstein, Grossman, Sawyer & Edises, Aubrey Grossman and Richard Gladstein for Respondents.

TRAYNOR, J.—The claimants for unemployment insurance benefits herein are longshoremen, members of Local 1-10 of the International Longshoremen's and Warehousemen's Union, District No. 1, who work under a collective bargaining agreement with the Waterfront Employers' Association, an employers' association with a membership substantially the same as that of the former Dock-Checkers Employers' Association. (See *Matson Terminals, Inc.,* v. *California Employment Commission, ante,* p. 695 [151 P.2d 691].) According to the findings of the Employment Commission the Ship Clerks' Union, a local belonging to the same international as the longshoremen's union, became involved in a dispute with one of the employers, the American-Hawaiian Steamship Company, and on June 14, 1939, called a strike against that company and established picket lines at its dock in San Francisco. Relations were suspended between members of the union and members of the Dock-Checkers Employers' Association, and because of this suspension of relations, checkers and ship clerks failed to report for work on June 17, 1939. The employers concede that because they regarded the strike against the American-Hawaiian Steamship Company a violation of their agreement with the union, they refused to employ any dock-checkers or ship clerks at the San

Francisco Bay ports from June 17, 1939, until the termination of the strike on June 27, 1939.

On June 17th various gangs of longshoremen were dispatched by the hiring hall to docks operated by members of the employers' association. At the docks some of the longshoremen were told not to start work unless they would continue without checkers or ship clerks, while others were instructed by the employers or their agents to return to the hiring hall. Some gangs went to work aboard the ships but stopped when they reached that stage of the work where checkers were usually employed. The men worked who were dispatched to docks where union clerks and checkers were not customarily required. Dock checkers and ship clerks keep clerical records of the cargo for the employer, but do no physical work in the loading and discharging of vessels.

Approximately 5,000 longshoremen filed claims for unemployment benefits for the period from June 17, 1939, to June 27, 1939. The adjustment unit of the Division of Unemployment Insurance denied benefits on the ground that the claimants were disqualified under section 56 (a) of the Unemployment Insurance Act. (Stats. 1935, ch. 352, as amended; Deering's Gen. Laws, Act 8780d.) Payments, however, were erroneously made to a number of the claimants. Claimants appealed from the adverse ruling, and the referee after hearing reversed the initial determinations and awarded benefits. Upon the employers' appeal, the commission, with one member dissenting, affirmed the referee's decision upon the ground that claimants were not disqualified under section 56 (a) of the act since the absence of checkers and ship clerks from docks where they were formerly customarily employed was a deviation from the customary method of working and therefore constituted a violation by the employers of the requirement of the collective bargaining agreement that "present practices are to continue in effect." The commission held the claimants eligible to certify for the weeks of waiting period with respect to the unemployment involved, since they had not been previously unemployed long enough to render them eligible for benefits.

Most of the employers thereafter filed actions in the superior court to recover unemployment insurance contributions paid under protest. The employers also petitioned the District

Court of Appeal, First Appellate District, Division Two, for a writ of mandamus to compel the commission to vacate its decision and to correct its records by removing therefrom any charges against the employers for payments to claimants for the period from June 17 to June 27, 1939. The District Court of Appeal issued the writ and vacated the commission's decision. Thereafter, upon the petition of the commission and of claimants, who are interveners in the proceeding, this court granted a hearing. By stipulation the case was submitted on the record of the proceedings before the commission with the reservation of the right to try before the court the question whether the parties should have the right to try the case de novo but the question as to this right was not argued.

The commission and claimants contend that the employers are not entitled to the writ, on the ground that they have not exhausted their administrative remedies and can secure adequate relief under the provisions of section 41.1 of the Unemployment Insurance Act. (Deering's Gen. Laws, 1941 Supp., Act 8780d, § 41.1; Stats. 1941, ch. 940, p. 2535, § 2.) This contention is answered adversely in *Matson Terminals, Inc.*, v. *California Emp. Com., ante*, p. 695 [151 P.2d 202].

Their contention that the writ should be denied because the charges to the employers' accounts involved in this proceeding are also the subject of the actions pending in the superior court is likewise without merit. ■ The writ of mandamus is not so exceptional in nature, as petitioners suggest, that it is never abated by the pendency of other litigation. Although it was originally a high prerogative writ to which the plea of another action pending was not available (*George* v. *Beaty*, 85 Cal.App. 525, 528 [260 P. 386] ; *Calaveras County* v. *Brockway*, 30 Cal. 325, 337; *United States Protective Ass'n* v. *Board of Police Commrs.*, 14 Cal.App. 249 [111 P. 755] ; *Gray* v. *Mullins*, 15 Cal.App. 118 [113 P. 694]), it no longer depends upon prerogative power (*Potomac Oil Co.* v. *Dye*, 10 Cal.App. 534, 537 [102 P. 677] ; *Barnes* v. *Glide*, 117 Cal. 1, 5-6 [48 P. 804, 59 Am.St.Rep. 153] ; see 16 Cal.Jur. 763; Hart, An Introduction to Administrative Law, p. 439) and is by statute expressly subject to the rules of practice applicable to other actions when there are no provisions otherwise. (Code Civ. Proc., §§ 1109, 1089; *Taylor* v. *Burks*, 6 Cal.App. 225, 228 [91 P. 814] ; *Jones* v. *Board of Police Commrs.*, 141 Cal. 96 [74 P.

696]; *Barnes* v. *Glide, supra;* see *Scott* v. *Superior Court,* 83 Cal.App. 25, 30 [256 P. 603]; *People* v. *Board of Supervisors,* 27 Cal. 655.) The provisions of the Code of Civil Procedure thus made applicable to mandamus proceedings include those allowing the defense of ''another action pending between the same parties for the same cause.'' (Code Civ. Prov., §§ 430, 433; *Goytino* v. *McAleer,* 4 Cal.App. 655, 659-660 [88 P. 991].) ▮ The writ is therefore denied if a similar application between the same parties on the same matter is already pending before another court. (*Goytino* v. *McAleer, supra; McMullen* v. *Glenn-Colusa Irr. Dist.,* 17 Cal.App.2d 696, 701-702 [62 P.2d 1083].) The pendency of another action, however, is no defense unless it is ''between the same parties for the same cause.'' (Code Civ. Proc., § 430 (3); *Knapp* v. *Knapp,* 15 Cal.2d 237, 243 [100 P.2d 759]; *Schoonover* v. *Birnbaum,* 150 Cal. 734, 736 [89 P. 1108]; *Capuccio* v. *Caire,* 189 Cal. 514, 528 [209 P. 367]; *McCormick* v. *Gross,* 135 Cal. 302 [67 P. 766]; *O'Hara* v. *Grand Lodge I. O. G. T.,* 213 Cal. 131, 144 [2 P.2d 21]; see 1 Cal.Jur. 28-29, 31.) ▮ The superior court actions, which in the view of the commission and claimants abate the present proceedings, are suits to recover unemployment insurance contributions paid by the employers under protest, brought under authority of section 45.10 of the Unemployment Insurance Act. The parties are not the same, for some employers who are petitioners herein, and claimants who are intervenors herein, are not involved. Moreover, those actions challenge the propriety of other contributions in addition to those affected by the commission's decision in the present case, and the two causes of action are not the same. The present petition for a writ of mandamus is to test the validity of the commission's decision that claimants are entitled to the benefits of the Unemployment Insurance Act in the form of payments or credit for the weeks of waiting period, and is in effect an appeal to the courts from a determination under section 67 of the act. An action under section 45.10 is entirely different, simply determining the propriety of the employer's contributions to the fund. (*Bodinson Mfg. Co.* v. *California Employment Com.,* 17 Cal.2d 321 [109 P.2d 935]; *Matson Terminals, Inc.,* v. *California Employment Commission, supra.*) Section 67 allows any employer ''whose reserve account may be affected by the payment of benefits to

any individual formerly in his employ'' to become an interested party to the proceeding to determine the validity of the claimant's application for benefits. ■ No cause of action arises under section 45.10 in relation to those benefits unless they actually affect the amount of the employer's contribution and he pays the increased amount under protest. The employer's protest of the amount of the contribution assessed against him may be based upon various grounds having no relation to the validity of benefits paid, and in the present case it is not clear from the complaints in the superior court action that the plaintiffs therein are attempting in that action to challenge the legality of the commission's decision involved in this proceeding. ■ The fact that they may upon a trial seek to support their claims with identical proof is insufficient as a ground of abatement. (*Hall* v. *Susskind,* 109 Cal. 203 [41 P. 1012].)

■ Claimants contend that the present proceeding is barred by the statute of limitations, and argue that it should have been commenced within the time prescribed for bringing an action under sections 45.10 or 41.1 to recover contributions alleged to have been illegally assessed against an employer. Actions brought under those sections, however, not only differ substantially from the proceedings for mandamus involved herein (*Bodinson Mfg. Co.* v. *California Employment Com., supra; Matson Terminals, Inc.,* v. *California Employment Com., supra*) but the limitation periods prescribed in those statutes clearly were intended to apply only to actions brought thereunder. They are not made applicable by section 1109 of the Code of Civil Procedure, which specifies for mandamus proceedings only the limitation periods prescribed in part two of that code. (Code Civ Proc., § 1109; *Jones* v. *Board of Police Commrs.,* 141 Cal. 96 [74 P. 696]; *Dillon* v. *Board of Pension Commrs.,* 18 Cal.2d 427 [116 P.2d 37, 136 A.L.R. 800].) No provision thereof that would bar the present proceeding has been cited. Section 343 of the Code of Civil Procedure, referring to actions not otherwise provided for in the preceding sections of the code, provides simply that such actions must be commenced within four years after accrual of the cause of action. ■ In the present case the commission's decision, though dated April 3, 1940, was not released until May 21, 1941, and the petition for rehearing was not

denied until July 19, 1941. The petition for the writ in the present action was filed in February, 1942. This period is well within any applicable statute of limitations, and no facts alleged indicate any laches on the part of petitioners. (See *Scott* v. *Superior Court*, 205 Cal. 525 [271 P. 906]; *Hayman* v. *City of Los Angeles*, 17 Cal.App.2d 674, 680-681 [62 P.2d 1047].)

The commission and claimants contend that the commission's decision that claimants are eligible to certify for the weeks of waiting period with respect to the unemployment involved, instead of for benefits, prevents application of the disqualification of section 56 (a) since that section refers only to eligibility for benefits. They point out that after the period of unemployment here involved the Unemployment Insurance Act was amended to provide specifically that during the waiting period the claimant must be eligible for benefits in virtually all respects (Deering's Gen. Laws, 1939 Supp., Act 8780d, § 57 (d) (3); Stats. 1939, ch. 674, § 13), and contend that this amendment should not be applied retroactively. The fact that the statute was thus amended, however, does not necessarily indicate that the law was different before the amendment. ▆ Although courts ordinarily infer an intent to change the law from a material change in the language of a statute (*People* v. *Weitzel*, 201 Cal. 116, 118 [255 P. 792, 52 A.L.R. 811]; *Loew's Inc.* v. *Byram*, 11 Cal.2d 746 [82 P.2d 1]; see Crawford, Statutory Construction [1940], p. 618), the circumstances may indicate merely a legislative intent to clarify the law (*Union League Club* v. *Johnson*, 18 Cal.2d 275, 278-279 [115 P.2d 425]; *Martin* v. *California Mut. B. & L. Ass'n*, 18 Cal.2d 478, 484 [116 P.2d 71]; *San Joaquin Ginning Co.* v. *McColgan*, 20 Cal.2d 254, 263-264 [125 P.2d 36]); see 1 Sutherland, Statutory Construction, [3d ed., 1943] pp. 415, 416, 418). ▆ In the present case the fact that claims were being filed in situations such as the present one is enough to warrant the inference that the Legislature intended simply to clarify the law (see *Union League Club* v. *Johnson, supra; San Joaquin Ginning Co.* v. *McColgan, supra*), since even before the amendment the eligibility requirements for the payment of benefits were properly applicable to the waiting period. (*Matter of Munterfering*, 256 App.Div. 151 [9 N.Y.S. 2d 830]; see *Martin* v. *California Mut. B. & L. Ass'n, supra*.)

The various disqualifications on eligibility for benefits imposed by the act then in effect clearly indicate that they were intended to apply as well to the waiting period. For example, the act provided that a claimant was not eligible for benefits unless he was physically able to work and available for work whenever called on by his employer and had registered as unemployed and for work (2 Deering's Gen. Laws 1937, Act 8780 (d), § 51), and that he was not eligible for benefits for any week in which he had suitable employment (*Ibid.*, § 52). The waiting period commenced from the date of his registration (*Ibid.*, § 65), but if immediately thereafter he became physically unable to work or was unavailable for work or obtained suitable employment, he would not be entitled to credit for the weeks of waiting period. ▉ Since the lapse of the waiting period is simply a prerequisite to the payment of benefits and not an independent privilege conferred by the act, the conditions for eligibility for benefits logically apply to the waiting period. (*Matter of Munterfering*, 256 App. Div. 151 [9 N.Y.S. 2d 830].) Thus, the disqualification imposed by section 56 if the claimant left his work because of a trade dispute also applied to the waiting period even before the statute specifically so provided. No question of retroactive interpretation of the amendment is therefore involved.

▉ The question of eligibility for credit for the weeks of waiting period as well as for the actual payment of benefits is properly raised in proceedings under section 67 of the act and the appeals allowed from the decisions therein, both under the former provision that the deputy shall determine whether or not the claim is valid and if valid the week with respect to which benefits shall commence (2 Deering's Gen. Laws, 1937, Act 8780d, § 67), and under the present provision that the initial determination shall include a determination as to whether benefits are payable. (Stats. 1939, ch. 1085, § 3; Deering's Gen. Laws, 1939, Act 8780d, § 67.)

Petitioners contend that claimants left their work because of a trade dispute and are therefore disqualified under section 56 (a) of the act. (Stats. 1939, ch. 7, § 4; Deering's Gen. Laws, 1939 Supp., Act 8780d, § 56 (a).) It is their view that even though the checkers were locked out, their presence was not physically essential to performance of longshore work, and that the commission in determining whether claimants had left their work because of a trade dispute could not properly consider the question whether the checkers' absence cre-

ated a condition of work in violation of the longshoremen's collective bargaining agreement.

It is not the function of the commission to evaluate the merits of a controversy between an employer and his employees; if a trade dispute exists and the employee leaves his work because of it, he may not receive benefits even though his employer is in the wrong. In some states the unemployment insurance acts specifically provide that workers shall not be ineligible for benefits if the labor dispute is caused by the failure or refusal of the employer to conform to the provisions of any agreement or contract between the employer and employee (2 C.C.H. Unemployment Insurance Service 6214-6215, par. 4034 [Ariz.]; *Ibid.*, p. 7217, par. 4042 [Ark.]; 4 *Ibid.*, p. 32,213, par. 4028 [N.H.]), but the disqualification imposed by section 56 (a) is not contingent upon the merits of the controversy nor was it intended that the commission should become an arbitrator of industrial disputes. The commission therefore exceeded its powers when it determined the merits of the dispute in the present case and awarded benefits or credit for the weeks of waiting period on the basis of that determination.

The fact that the commission based its decision upon erroneous grounds, however, does not of itself warrant the issuance of the writ, if there was other legal justification for the decision. (*Ward* v. *Flood,* 48 Cal. 36, 46-47 [17 Am.Rep. 405]; *Bank of Italy* v. *Johnson,* 200 Cal. 1, 28-30 [251 P. 784].) In the present case the commission's findings of fact grouped claimants into three classifications: (1) those longshoremen who upon reporting at the docks were told by the employers or their agents not to begin work unless they were willing to continue without checkers; (2) those who stopped working when they reached that stage in their work where checkers are usually employed; and (3) those who were told by the employers to return to the hiring hall, either before or after they had begun work.

Those longshoremen who stopped working when they reached that stage in their work where checkers were usually employed and those who were told by the employers not to commence work unless they were willing to continue without checkers or ship clerks are disqualified under the provisions of section 56 (a). (*Matson Terminals, Inc.,* v. *California Employment Commission, ante,* p. 695 [151 P.2d 202];

*American-Hawaiian Steamship Co.* v. *California Employment Commission, ante,* p. 716 [151 P.2d 213].) Although the commission states in its decision that it was customary for certain work to be done by checkers or clerks and that they were customarily employed at some of the docks, there was no finding that the longshoremen could not do their work without checkers, and the evidence before the commission indicated that they were not essential to the performance of the longshore work. The stoppage of work therefore could not be attributed to any physical inability to continue, and was equivalent to a leaving of work, whether the subsequent departure from the employer's premises was on the longshoremen's own volition or at the employer's direction. The commission and claimants contend, however, that even if claimants left their work, they did not leave because of a trade dispute, but because of a condition of work resulting from a trade dispute, namely, the absence of the checkers or ship clerks. There is little question, however, that the absence of the checkers and ship clerks gave rise to a trade dispute between the employers and the longshoremen independent of the dispute existing between the employers and the ship clerks, for the uncontradicted evidence shows that the longshoremen contended that their collective bargaining agreement required the presence of the ship clerks, while the employers contended that the agreement was not violated by their absence and that even if it were, the longshoremen's remedy under that agreement lay in arbitration. It may be that a clear violation by an employer of a definite and unambiguous term of his contract would constitute the imposition of a more onerous condition of employment rather than a matter subject to a labor dispute. (See 3 C.C.H. Unemployment Insurance Service, par. 1980.155, par. 1980.02.) If, however, the alleged violation is of a general provision, as in the present case, and is denied by the employer, the disagreement gives rise to a labor dispute. Although the commission made the general findings that "no dispute existed between last employer and claimants herein," this finding is nullified by other findings, supported by uncontradicted evidence, indicating that the absence of checkers and ship clerks was the controlling factor in the longshoremen's refusal to work because they regarded it as a breach of the collective bargaining agreement. Since the finding that no dispute existed was coupled with the finding

that ''none of the claimants herein are members of the Ship Clerks' Union,'' it was apparently intended to refer only to the original dispute between the ship clerks and the employers. Moreover, it was not essential to disqualification that a dispute exist directly between the longshoremen and the employers; if the former left their work because of the dispute between the employers and the ship clerks, they in effect made the latter dispute their own and are within the disqualification of section 56 (a). (*Bodinson Mfg. Co.* v. *California Emp. Com.*, 17 Cal.2d 321 [109 P.2d 935].)

The commission and claimants contend that in any event the award in the present case is justified by the provitions of section 58 (a) of the act imposing only a temporary disqualification upon a claimant who leaves his most recent work voluntarily and without good cause. They contend that if the claimants be held to have left their work voluntarily, they should be subject to no more severe penalty than that imposed by section 58 (a) since no formal strike was called by the longshoremen's union and no picket line was established by them, and since those who refused to work did so because of changed conditions of employment. The disqualification imposed by that section, however, is not applicable to a claimant subject to the disqualification imposed by section 56 (a). (See *Bodinson Mfg. Co.* v. *California Emp. Com.*, *supra*.)

Those claimants, however, in the third classification described above, who were told by their employers to return to the hiring hall either before or after the commencement of work, did not leave their work within the meaning of section 56 (a) unless they were told to return to the hiring hall because of their refusal to work without checkers. The commission's finding is uncertain in this regard. It appears from the record of the proceedings before the commission that some of the claimants were never dispatched from the hiring hall, although there is evidence that during the period of the dispute between June 17th and June 27th orders for longshoremen were placed by the employers with the dispatcher at the hiring hall that were not filed. These claimants are not disqualified under section 56 (a) unless they refused to be dispatched, in response to the employers' request for longshoremen because they would not work without checkers. There should be a finding by the commission in answer to this question. Moreover, the commission did not

identify the claimants that were within the various classifications discussed earlier. The commission should therefore be required to take whatever additional evidence is necessary and to make determinations as to the individual claimants in accord with the views herein expressed. (See *Bila* v. *Young,* 20 Cal.2d 865, 870 [129 P.2d 364] ; *Helvering* v. *Rankin,* 295 U.S. 123, 131 [55 S.Ct. 732, 79 L.Ed. 1343] ; *Federal Communications Com.* v. *Pottsville Broadcasting Co.,* 309 U.S. 134, 145 [60 S.Ct. 437, 84 L.Ed. 656] ; *Helvering* v. *Smith,* 132 F. 2d 965, 968.)

Let a peremptory writ of mandate issue ordering the commission to proceed as herein directed.

Gibson, C. J., Shenk, J., Curtis, J., and Edmonds, J., concurred.

CARTER, J.—I dissent upon the same grounds as set forth in my dissenting opinion in *Matson Terminals, Inc.,* v. *California Emp. Com.,* this day filed, *ante,* p. 711 [151 P.2d 211].

In this case, however, the initial determination by the adjustment unit was against the employees. On appeal the referee allowed benefits, and the allowance was affirmed by the commission. The unemployment occurred in June, 1939. At that time section 67 of the California Unemployment Insurance Act as amended in 1937 was in effect, and it provided that benefits were payable regardless of any appeal where there had been either an allowance of benefits by the adjustment unit followed by an affirmance by the referee *or* an allowance by a referee followed by an affirmance by the commission (Stats. 1937, p. 2059). Although the proceedings to determine the claim for benefits occurred after the 1939 amendment went into effect, there is nothing in that amendment to indicate that it is retroactive. The right to benefits regardless of appeal is a substantive right which should not be defeated by a subsequent change in the law at least unless such an intent clearly appears.

In my opinion the writ should be denied.

Schauer, J., concurred.

Interveners' petition for a rehearing was denied September 13, 1944. Carter, J., and Schauer, J., voted for a rehearing.