[S. F. No. 16838. In Bank. Aug. 18, 1944.]

AMERICAN-HAWAIIAN STEAMSHIP COMPANY (a Corporation) et al., Petitioners, v. CALIFORNIA EMPLOYMENT COMMISSION et al., Respondents; JAMES DUGGAR et al., Interveners and Respondents.

Brobeck, Phleger & Harrison and Gregory A. Harrison for Petitioners.

Earl Warren, Attorney General, Robert W. Kenny, Attorney General, John J. Dailey, Deputy Attorney General, Maurice P. McCaffrey, Glenn V. Walls, Ralph R. Planteen, Charles P. Scully, Forrest M. Hill, Gladstein, Grossman, Margolis & Sawyer, Ben Margolis, William Murrish, Gladstein, Grossman, Sawyer & Edises, Aubrey Grossman and Richard Gladstein for Respondents.

TRAYNOR, J.—On November 10, 1939, the Ship Clerks' Union, Local 1-34 of the International Longshoremen's and Warehousemen's Union, called a strike effective at 6:00 p. m. on that day against employers who were members of the Dock-checkers Employers' Association of San Francisco, because they could not agree upon the renewal terms of collective bargaining agreements that had expired on September 30, 1939. The strike continued until January 3, 1940, when it was terminated by agreement of the parties. The Dock-Checkers' Employers' Association, now part of the Waterfront Employers' Association of San Francisco, represented its members, who operate terminal facilities for freight transported by water to and from ports on San Francisco Bay, in their collective bargaining with the Ship Clerks' Union. The employment arrangement, similar to that for the longshoremen, was established under a contract executed on March 30, 1937, between the checkers' union and the employers' association. By agree-

ment the parties were continuing to operate under this contract at the time of the strike. The union and the employers' association operated jointly a hiring hall from which checkers were dispatched as employers called for them. There are several classes of checkers: (1) monthly checkers, who work for only one company and are paid a monthly salary; (2) preferred daily checkers, who work for only one company so long as their services are needed and are paid on an hourly basis but who are allowed to work through the hiring hall as casual daily checkers if the company by which they are preferred has no work for them for more than a two-day period; (3) casual daily checkers, who are members of the union and are dispatched in rotation from the hiring hall to work on an hourly basis for various employers and who may work for a number of employers in any one day; (4) permit checkers, who are not members of the checkers' union but are represented by it for collective bargaining purposes, and are dispatched through the hiring hall after the casual daily checkers' list is exhausted. Workers are dispatched from the hiring hall in rotation to equalize work opportunities. Upon finishing an assignment the checker returns to the hiring hall to await assignment to a new job.

The present proceeding involves the claims for unemployment insurance benefits for the period of the strike of 125 casual daily checkers, preferred daily checkers whose status had become that of casual daily checkers, and permit checkers, who went on a strike although they were either not working upon any assignment at 6:00 p. m. on November 10, 1939, or were working at that time for employers who were not members of the association and not subject to the strike. Workers in the latter classification continued to work until their job assignments were completed. All of the claimants refused to work during the strike for any of the members of the employers' association against whom the strike was called.

The claims were denied by the adjustment unit of the Division of Unemployment Insurance, but the referee granted them upon the ground that claimants did not leave their work because of a trade dispute within the meaning of section 56 (a) of the Unemployment Insurance Act. (Stats. 1935, ch. 352, as amended; Deering's Gen. Laws, Act 8780d.) The commission affirmed the award, with two members dissenting. The employers thereupon petitioned the District

Court of Appeal, First Appellate District, Division Two, for a writ of mandamus to compel the commission to vacate its order awarding benefit payments and to refrain from charging their accounts with such payments. That court issued the writ and this court granted a hearing at the request of the commission and of the claimants who intervened in the proceeding. By stipulation the case was submitted on the record of the proceedings before the commission with the reservation of the right to try the question before the court whether the parties should have the right to try the case de novo, but the question as to that right was not argued.

Since the claimants went on a strike against petitioners and refused to work for them during the strike, they left their work because of a trade dispute within the meaning of section 56 (a) of the California Unemployment Insurance Act, *supra,* and are precluded by that section from receiving benefit payments for unemployment during the period of the strike. (*Matson Terminals, Inc.* v. *California Employment Commission, ante,* p. 695 [151 P.2d 202].) The contention that petitioners have not exhausted their administrative and legal remedies under section 41.1 of the act is answered adversely in *Matson Terminals, Inc.,* v. *California Employment Commission, supra,* and the contention that the court is without power in this proceeding in mandamus to review the decision of the commission is answered adversely in *Bodinson Manufacturing Co.* v. *California Employment Commission,* 17 Cal.2d 321, 328-330 [109 P.2d 935].

Let a peremptory writ issue as prayed.

Gibson, C. J., Shenk, J., Curtis, J., and Edmonds, J., concurred.

CARTER, J.—I concur in the conclusion reached for the reason that the unemployment occurred after the effective date of the 1939 amendment to section 67 of the Unemployment Insurance Act.

In this case the initial determination by the adjustment unit denied unemployment benefits. Although that denial was reversed by the referee and benefits allowed and the latter order affirmed by the commission, benefits were not payable regardless of the appeal because section 67 of the California Unemployment Insurance Act as it read in 1939

(Stats. 1939, ch. 1085) required that payments be made where the referee affirmed "*an initial determination allowing benefits.*" In 1937 it provided that if a referee affirms a decision of a deputy *or the commission affirms a decision of the referee* allowing benefits, the benefits must be paid regardless of the appeal. (Stats. 1937, p. 2059.) (See dissenting opinion in *W. R. Grace & Co.* v. *California Emp. Com.*, this day filed *post*, p. 734 [151 P.2d 223].)

Schauer, J., concurred.

Interveners' petition for a rehearing was denied September 13, 1944. Carter, J., and Schauer, J., voted for a rehearing.