[No. B189970. Second Dist., Div. Six. June 21, 2007.]

LOWELL T. PATTON et al., Plaintiffs and Appellants, v.
MARK C. SHERWOOD et al., Defendants and Respondents.

COUNSEL

Ferguson, Case, Orr, Paterson & Cunningham, David B. Shea and Sandra M. Robertson for Plaintiffs and Appellants.

Norman, Dowler, Sawyer, Israel, Walker & Barton and Matthew P. Guasco for Defendants and Respondents.

OPINION

YEGAN, J.—Here we hold that the settlor of a charitable remainder unitrust (CRUT) may enforce the terms of the trust by petitioning the probate court concerning the internal affairs of the trust, here an accounting.[1] In the present case, the settlor of three irrevocable CRUT's successfully petitioned to remove the trustee. But, the trial court then ruled that settlor lacked standing to object to the ousted trustee's accounting because he was not a "beneficiary" within the meaning of Probate Code section 17200.[2] We reverse and conclude that a settlor may, pursuant to the terms of the trust instrument, reserve the power to object to trustee accountings. (§§ 17200, 24, subd. (d).)

*Facts and Procedural History*

In 2002 appellant Lowell T. Patton and his wife, Mary Lou Patton, created three CRUT's for their children: the Lowell & Mary Lou Patton Charitable Remainder Unitrust for Sally Patton Walter, the Lowell & Mary Lou Patton Charitable Remainder Unitrust for Jodi Ream Patton, and the Lowell & Mary Lou Patton Charitable Remainder Unitrust for Jack T. Patton. The CRUT's named the children as income beneficiaries and named four charities as remainder beneficiaries.

The CRUT's were prepared by Attorney Matthew B. Mack of Estate Strategies for Charities, Inc. They were funded with professional minor league baseball stock valued at $2.4 million. Mack named himself administrative trustee and named Mark C. Sherwood management trustee.

---

[1] A CRUT is a trust that pays out a defined percentage of its net worth annually, leaving whatever remains at the end of term (a specified number of years of the life of the beneficiary) to charity. (See 26 U.S.C. § 664(d)(2); *Leila G. Newhall Unitrust v. C.I.R.* (9th Cir. 1997) 105 F.3d 482, 484.)

[2] All statutory references are to the Probate Code unless otherwise stated.

Each CRUT provided that the trustor (appellant) reserved the right to change a remainder beneficiary and reserved the right to remove and replace the trustees. The CRUT's required that the administrative trustee prepare annual accountings and that appellant agrees "to review and approve or object to the Accounting within ninety (90) days from the date the accounting is mailed." (CRUT's, art. 5, § 5.3, subd. 5.3.5.) If the "Trustor . . . objects in writing to the Accounting within ninety (90) days, then the Objector shall have one year from the date the accounting is mailed in which to bring a claim for breach of trust, petition for a court supervised accounting, or to commence an action for other remedies." (*Ibid.*).

On February 4, 2005, appellant filed a petition to remove Mack and Sherwood as trustees. Mack and Sherwood claimed they had already resigned as trustees of one CRUT and declined to step down as trustees of the two other CRUT's until they were released from liability and awarded fees and expenses.

The trial court granted appellant's petition to remove Mack and Sherwood as trustees of the remaining CRUT's. The court appointed the Ventura County Public Guardian as successor trustee.

In a separate petition, Mack and Sherwood requested that the trial court settle their accounting, pay their fees and costs, and discharge them of liability. Appellant propounded discovery and objected to the accounting, alleging that Mack and Sherwood had charged excessive fees and breached their fiduciary duties. The trial court ruled that appellant lacked standing, relying on section 17200. The trial court said that only a trust beneficiary or trustee had standing to object to a trust accounting.

### *The Common Law*

█ It is well established that the settlor of a charitable trust who retains no reversionary interest in the trust property lacks standing to bring an action to enforce the trust independently of the Attorney General. (*O'Hara v. Grand Lodge I. O. G. T.* (1931) 213 Cal. 131, 139 [2 P.2d 21]; *Brown v. Memorial Nat. Home Foundation* (1958) 162 Cal.App.2d 513, 538 [329 P.2d 118].) Under the common law, the state, as *parens patriae*, superintends the management of charitable trusts and acts through its attorney general. (*Estate of Schloss* (1961) 56 Cal.2d 248, 257 [14 Cal.Rptr. 643, 363 P.2d 875]; see Gov. Code, § 12598, subd. (a) [Uniform Supervision of Trustees for Charitable Purposes Act].) "Other than the Attorney General, only certain parties who have a special and definite interest in a charitable trust, such as a trustee, have standing to institute legal action to enforce the assets of the trust. [Citations.] This limitation on standing arises from the need to protect

the trustee from vexatious litigation, possibly based on an inadequate investigation, by a large, changing, and uncertain class of the public to be benefited. [Citation.]" (*Hardman v. Feinstein* (1987) 195 Cal.App.3d 157, 161–162 [240 Cal.Rptr. 483].)

### Settlor's Reserved Power

Appellant meritoriously argues that the settlor of a charitable trust may, under the terms of the trust instrument, reserve the power to object to a trustee accounting. In *L.B. Research & Education Foundation v. UCLA Foundation* (2005) 130 Cal.App.4th 171 [29 Cal.Rptr.3d 710], a donor gifted $1 million to the UCLA Foundation (Foundation) to establish an endowed chair at the UCLA School of Medicine. The donor and Foundation executed a contract providing that the money would be used by qualified chairholders to support basic science research activities. (*Id.*, at p. 175.) The contract provided that if the funds were not used for the designated purpose, the gift would revert to a contingent donee, the University of California, San Francisco, School of Medicine. (*Id.*, at pp. 175–176.) The donor sued for specific performance, declaratory relief, and breach of contract alleging that Foundation had failed to provide an accounting or employ personnel meeting the criteria for the chair endowment. Foundation defended on the theory that the donor had created a charitable trust which only the Attorney General had standing to enforce. The trial court found that the donor lacked standing to sue and granted judgment on the pleadings.

The Court of Appeal reversed on the theory that the donor was suing on a contract subject to a condition subsequent and had standing to sue. (*L.B. Research & Education Foundation v. UCLA Foundation, supra*, 130 Cal.App.4th at p. 175.) In dicta, the court stated that the result would be the same had the donor created a charitable trust. (*Id.*, at p. 180.) It cited *Holt v. College of Osteopathic Physicians & Surgeons* (1964) 61 Cal.2d 750 [40 Cal.Rptr. 244, 394 P.2d 932] for the principle that "the 'prevailing view of other jurisdictions is that the Attorney General does not have exclusive power to enforce a charitable trust and that a trustee or *other person having a sufficient special interest* may also bring an action for this purpose. This position is adopted by the American Law Institute (Rest.2d Trusts, § 391) and is supported by many legal scholars. [Citations.]' " (*L.B. Research & Education Foundation v. UCLA Foundation, supra*, 130 Cal.App.4th at p. 180.)

The court in *L.B. Research & Education Foundation v. UCLA Foundation* acknowledged that statutes authorizing the Attorney General to enforce

charitable trusts were enacted to provide adequate supervision and enforcement of charitable trusts. (*L.B. Research & Education Foundation v. UCLA Foundation, supra*, 130 Cal.App.4th at p. 181.) " '[T]he Attorney General has been empowered to oversee charities as the representative of the public, a practice having its origin in the early common law. [Citation.] [¶] In addition to the general public interest, however, there is the interest of donors who have directed that their contributions be used for certain charitable purposes. Although the public in general may benefit from any number of charitable purposes, charitable contributions must be used only for the purposes for which they were received in trust. [Citations.] Moreover, part of the problem of enforcement is to bring to light conduct detrimental to a charitable trust so that remedial action may be taken.' " (*Ibid.*)

Under the terms of the CRUT's, appellant reserved the power to change the remainder beneficiaries, remove and replace trustees, receive and object to trust accountings, "to bring a claim for breach of trust," and petition for a court supervised accounting. (CRUT's, art. 5, § 5.3, subd. 5.3.5.) If appellant has standing to compel an accounting, he has the associated right to object to the accounting. (Campisi & Latham, Cal. Trust and Probate Litigation (Cont.Ed.Bar 2006) § 13.40, p. 425.)

As explained in *Holt v. College of Osteopathic Physicians & Surgeons, supra*, 61 Cal.2d at pages 755–756: "There is no rule or policy against supplementing the Attorney General's power of enforcement by allowing other responsible individuals to sue in behalf of the charity. The administration of charitable trusts stands only to benefit if in addition to the Attorney General other suitable means of enforcement are available." (Fn. omitted; see also *San Diego etc. Boy Scouts of America v. City of Escondido* (1971) 14 Cal.App.3d 189, 195 [92 Cal.Rptr. 186] ["right of the Attorney General to sue to enforce a charitable trust is not exclusive: other responsible individuals may be permitted to sue on behalf of the charity."].)

### Standing to Sue As a Beneficiary

■ Respondents argue that section 17200 trumps any reserved power in the trust instruments and that standing is jurisdictional. (See *Johnson v. Tate* (1989) 215 Cal.App.3d 1282, 1285 [264 Cal.Rptr. 68], citing *Estate of Bissinger* (1964) 60 Cal.2d 756, 764 [36 Cal.Rptr. 450, 388 P.2d 682].)[3]

---

[3] The argument is based on the theory that the probate court is a court of limited jurisdiction and has no subject matter jurisdiction to consider appellant's objections. That rule, however, was abrogated by the 1990 amendment of section 17001 which provides: "In proceedings commenced pursuant to this division, the court is a court of general jurisdiction and has all the powers of the superior court." The Law Revision Commission Comments to section 17001 state: "This section, along with Sections 17000 and 17004, is intended to eliminate any notion

Section 17200 provides that only a trustee or "beneficiary" may petition the probate court "concerning the internal affairs of a trust."[4] (See *Esslinger v. Cummins* (2006) 144 Cal.App.4th 517, 524 [50 Cal.Rptr.3d 538] [remainder beneficiary standing].) Section 24 states: " 'Beneficiary' means a person to whom a donative transfer of property is made or that person's successor in interest, *and*: [¶] . . . [¶] (d) As it relates to a charitable trust, *includes any person entitled to enforce the trust*." (Italics added.)

The trial court erroneously construed section 24, subdivision (d) to mean that a beneficiary must be a person to whom a donative transfer of property is made and must also be a person who is entitled to enforce the trust. It ruled that the CRUT's "contain language that suggests that a trustor may object to an accounting" but concluded that "a trust instrument cannot convey standing to a trustor to object to an accounting when the legislature has only given that authority to trustees and beneficiaries."[5]

■ Interpretation of section 24 presents a question of law. (See, e.g., *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) The first step in statutory construction is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. (*People v. Valladoli* (1996) 13 Cal.4th 590, 597 [54 Cal.Rptr.2d 695, 918 P.2d 999].) "We construe the words of a statute in context, and harmonize the various parts of an enactment by considering the provision at issue in the context of the statutory framework as a whole. [Citations.]" (*Cummins, Inc. v. Superior Court* (2005) 36 Cal.4th 478, 487 [30 Cal.Rptr.3d 823, 115 P.3d 98].)

---

that the 'probate court' is one of limited power or that it cannot dispose of matters properly brought before it . . . ." (Cal. Law Revision Com. com, 1990 Amendment, reprinted at 54A West's Ann. Prob. Code (1991 ed.) foll. § 17001, p. 184; see also 13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, §§ 219–221, pp. 800–803; *Harnedy v. Whitty* (2003) 110 Cal.App.4th 1333, 1345 [2 Cal.Rptr.3d 798].)

[4] Section 17200 provides in pertinent part: "(a) . . . [A] trustee or beneficiary of a trust may petition the court under this chapter concerning the internal affairs of the trust . . . . [¶] (b) Proceedings concerning the internal affairs of a trust include, but are not limited to, proceedings for any of the following purposes: [¶] . . . [¶] (5) Settling the accounts and passing upon the acts of the trustee . . . ."

[5] The trial court concluded that the accountings "were filed in the Probate Court" and that "[t]he Probate Court is a Court of limited jurisdiction." This finding contravened section 17001, a statutory enlargement of probate court jurisdiction that was presaged by the Supreme Court in *In re Estate of Baglione* (1966) 65 Cal.2d 192 [53 Cal.Rptr. 139, 417 P.2d 683]. "To deny a superior court sitting in probate the power to determine the whole controversy between the parties . . . is pointless." (*Id.*, at p. 197.) This principle is reflected in section 17000, subdivision (b) which provides: "The superior court having jurisdiction over the trust . . . has concurrent jurisdiction of the following: [¶] . . . [¶] (3) Other actions and proceedings involving trustees and third persons."

The first sentence of section 24 states that " 'Beneficiary' means a person to whom a donative transfer of property is made or that person's successor in interest . . . ." The Legislature used the word "and" to link this sentence to subdivision (d) which states: "As it relates to a charitable trust, *includes* any person entitled to enforce the trust." (Italics added.)

■ Respondents contend that the phrase "includes any person" is a qualifying clause, intended to narrow the class of beneficiaries who can object to an accounting. We reject the argument because any beneficiary of an irrevocable trust has standing to seek redress for breach of a trust. (§ 17200, subd. (b)(12); Campisi & Latham, Cal. Trust and Probate Litigation, *supra*, § 13.41, p. 426; see § 24, subd. (c), providing that trust beneficiary means "a person who has any present or future interest, vested or contingent.") Respondents' proposed construction renders section 24, subdivision (d) redundant. It violates the principle that "[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage. [Citation.]" (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22 [56 Cal.Rptr.2d 706, 923 P.2d 1].)

■ The word "includes" is ordinarily a word of enlargement, not limitation. (*Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1101 [17 Cal.Rptr.2d 594, 847 P.2d 560]; *Oil Workers Intl. Union v. Superior Court* (1951) 103 Cal.App.2d 512, 570 [230 P.2d 71].) ■ Here the phrase "includes any person," as used in section 24, subdivision (d), expands the class of persons who may bring an action to enforce a charitable trust. One such person is the Attorney General. (See Ross, Cal. Practice Guide: Probate (The Rutter Group 2006) ¶ 3.83.3, p. 3-31 [construing "any person entitled to enforce the trust" to be the California Attorney General].) Section 24, subdivision (d), includes other interested persons, otherwise it would be redundant with section 17210 which provides that the Attorney General may stand in the place of the beneficiaries to enforce the charitable trust. (See Cal. Law Revision Com. com. 1990 Enactment, reprinted at 54A West's Ann. Prob. Code (1991 ed.) foll. § 17210, p. 207; *Estate of Schloss, supra*, 56 Cal.2d at p. 257.)

Respondents cite older cases holding that settlors/trustors have no standing to bring an action to enforce a charitable trust. (*American Center for Education, Inc. v. Cavnar* (1978) 80 Cal.App.3d 476, 498 [145 Cal.Rptr. 736] [donor lacks standing]; *O'Hara v. Grand Lodge I. O. G. T., supra*, 213 Cal. 131, 139–140 [trustor lacks standing]; *Marin Hospital Dist. v. Department of Health* (1979) 92 Cal.App.3d 442, 448–449 [154 Cal.Rptr. 838] [donors have

no standing]; · *Brown v. Memorial National Home Foundation, supra,* 162 Cal.App.2d at p.. 538 [trustors and donors lack standing].) Those cases, however, predate the 1983 enactment of section 24 which provided: "Beneficiary, as it relates to trust beneficiaries, includes a person who has any present or future interest, vested or contingent, and also includes the owner of an interest by assignment or other transfer *and as it relates to a charitable trust, includes any person entitled to enforce the trust.*" (Italics added.) Section 24 was a new provision to the Probate Code. (Cal. Law Revision Com. com., reprinted at 52 West's Ann. Prob. Code (2002) foll. § 24, p. 26: see, e.g., *Conservatorship of Wendland* (2001) 26 Cal.4th 519, 542 [110 Cal.Rptr.2d 412, 28 P.3d 151] [official comments of California Law Revision Commission are persuasive evidence of legislative intent].)

In 1987, section 24 was amended to expand "the scope of this [beneficiary] definition to cover other donative transfers, in addition to wills and trusts." (Cal. Law Revision Com. com., reprinted at 52 West's Ann. Prob. Code, *supra,* foll. § 24, p. 26.) In 1990, section 24 was repealed and reenacted without substantive change. (Cal. Law Revision Com. com., reprinted at 52 West's Ann. Prob. Code, *supra,* at p. 25; Stats. 1990, ch. 79, § 14, p. 463.)

■ We hold that section 24, subdivision (d) permits the settlor of a charitable trust to object to an accounting where the settlor has reserved the power in the trust instrument.[6] Like the donor in *L.B. Research & Education Foundation v. UCLA Foundation, supra,* 130 Cal.App.4th 171, appellant reserved the power to receive and object to accountings, to petition for a court-supervised accounting, and to bring a claim for breach of trust. Our holding is not only consistent with the law, but encourages the salutary goal of making charitable donations. Charitable gifts "on condition" that the money is used for the intended gift purpose would give the trust settlor peace of mind that his or her gift will actually be used for a charitable purpose. What better way to see that the gift is delivered than to have an accounting?[7]

---

[6] Uniform Trust Code section 405(c) (2004) recognizes that the settlor of a charitable trust has standing to enforce it where that settlor has, by the terms of the trust, reserved a power to do so. "Obviously the settlor may expressly reserve to himself powers and privileges with regard to acts of administration. . . ." (Chester et al., The Law of Trusts & Trustees (3d ed. 2005) § 415, p. 70.)

[7] In light of our holding, we do not reach appellant's contention based on section 15642.

The judgment (order overruling appellant's objections to the trustee accountings) is reversed. Appellant is awarded costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.