Filed 5/5/23 Fleming & Curti, PLC v. Dixon CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| FLEMING & CURTI, PLC, | |
| Plaintiff and Respondent, | G061043 |
| v. | (Super. Ct. No. 30-2019-01113636) |
| DAVID DIXON, | O P I N I O N |
| Objector and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Randell L. Wilkinson, Judge. Affirmed.

Bunt & Shaver, and David N. Shaver for Objector and Appellant.

Law Office of Robert E. Hales, R. Chad Hales, and Hart Kienle Pentecost, Andrew C. Kienle, and Rhonda H. Mehlman, for Plaintiff and Respondent.

\*        \*        \*

After Keith Alan Dixon died intestate, the public administrator sold Dixon's residence, unaware that Dixon had previously executed a grant deed transferring the real property to the Dixon Charitable Remainder Unitrust (the Trust). Respondent Fleming & Curti, PLC, the trustee, filed a Probate Code section 850 petition (the petition) requesting an order finding that Dixon had transferred the property to the Trust before his death and ordering the public administrator to transfer the proceeds from the sale of the property to the trustee. David Dixon, a relative of Dixon, objected.[1]

Following a trial, the probate court granted the petition. On appeal, appellant contends Code of Civil Procedure section 366.3 (section 366.3) bars the Probate section 850 petition. As discussed below, we conclude section 366.3 does not apply in this case. Appellant further argues that under Probate Code sections 15401 and 15402 (sections 15401 and 15402), the grant deed did not validly transfer the real property to the Trust because Dixon failed to comply with the mandatory procedures for making additional contributions set forth in the Trust. As discussed below, sections 15401 and 15402 do not apply in this case. In any event, the transfer was valid. Accordingly, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Dixon's Trust and Estate*

In December 2001, Dixon established the Trust. The Trust's beneficiary is the University of Arizona Foundation (the University). Dixon served as the Trustee of the Trust until July 24, 2018, when he died intestate. He was not married, and was not survived by children, parents, or siblings. Dixon's estate is administered by the public administrator, and the persons who are entitled to the distributions from the estate are 21 distant relatives, including appellant.

---

[1]  Because Keith Dixon and David Dixon share the same last name, for clarity we will refer to Keith Dixon as "Dixon" or "decedent" and to David Dixon as "appellant."

Before Dixon's death, he prepared a grant deed transferring his home, a real property located in Los Alamitos, California, (the Property), from himself as a single man to the Trust. He signed the deed before a notary on September 16, 2008, but did not record the deed. After Dixon's death, on May 29, 2019, the public administrator sold the Property, and deposited the net proceeds of $1,227,927.46, into the estate's account. On August 28, 2019, Joseph Siler, as trustee of the Trust, filed a claim asserting that the proceeds from the sale of the Property belonged to the Trust. On September 17, 2019, the public administrator rejected the claim.

B. *Probate Code Section 850 Petition*

Siler subsequently resigned as trustee, and respondent Fleming & Curti, PLC, became trustee. On November 20, 2019, respondent filed a petition pursuant to Probate Code section 850, which permits a trustee to file a claim "[w]here the trustee has a claim to real or personal property, title to or possession of which is held by another." (Prob. Code, § 850, subd. (a)(3)(B).) The petition sought an order declaring the Property belonged to the Trust and ordering the proceeds from the sale of the Property be transferred to respondent. It alleged that Dixon intended to and did transfer the Property to the Trust before his death.

Appellant filed a written response and objection to respondent's petition. He argued the requested transfer could not be made pursuant to Article XV of the Trust. He further argued the petition was barred by the applicable statute of limitations in Code of Civil Procedure sections 366.2 and 366.3.

Before trial on the petition, the parties stipulated the "two main disputed factual/legal issues" were: (1) "by executing [the grant deed], did Keith Dixon intend to transfer his interest in [the Property] to the Trust?"; and (2) "Is the Trust's [Probate section 850] petition time-barred pursuant to [Code of Civil Procedure] sections 366.2 and 366.3?"

3

C. *Trial Testimony*

At trial, respondent called three witnesses: Joseph Siler, Damon Pierson, and Deborah Smith. Siler testified he was a long-time friend of Dixon. They were in a computer club together since 1985. As a favor to Dixon, Siler would do his taxes. Dixon told Siler that he intended for the bulk of his assets to go to the University. Siler became aware Dixon had a trust because Dixon asked him if he was willing to serve as a substitute trustee, and Siler agreed. Siler also began preparing tax returns for the trust in 2004. On August 14, 2008, Siler had a conference with Dixon and Dixon's insurance agent, Damon Pierson. They discussed what properties were in the trust.

Siler testified he discovered the grant deed about a year after Dixon's death when he was going through Dixon's papers. Siler immediately contacted the public administrator and Jim Krogmeier, the Vice-President of Giving for the University, about the grant deed. Siler testified that had he known about the grant deed, he would have "gotten a substantial deduction" for Dixon. Siler also testified that a year before Dixon died, Dixon mentioned he was thinking of leaving the house to his neighbor, Dr. Pederson, because the doctor was helping him by driving him to medical appointments, the bank and stores. Dixon, however, never told Siler he had executed any documents transferring the house to Dr. Pederson.

Pierson, a financial advisor and insurance agent, testified he did financial planning for Dixon from 2000 until the year Dixon died. Pierson helped Dixon establish the Trust. The ultimate beneficiary of the Trust "was originally and for the years that I knew him, he always wanted it to be the University of Arizona." Pierson also testified the beneficiary for the annuities and insurance policy Dixon owned was the University. He was unaware Dixon had executed the grant deed, but they had talked about the house and Pierson had advised Dixon that "he needed to do something to make sure the proper thing happened to go to the proper beneficiaries."

4

Smith, a public notary, testified she only performed notary work for customers of her employer World Savings Bank. Smith notarized Dixon's signature on the grant deed in September 2008.

Appellant called two witnesses: James Krogmeier and Richard Pederson. Krogmeier, the Associate Vice-President of Gift Planning for the University, testified the Foundation had a long relationship with Dixon, an alumnus of the university from the early 1950s. Dixon never mentioned the grant deed to Krogmeier, and Krogmeier only learned of the deed after Dixon's death.

Pederson, a retired radiologist, testified he was a neighbor of Dixon and knew him for over 30 years. About two years before Dixon died, Dixon told Pederson he wanted to leave his house to him. Dixon, however, never told Pederson he had written anything that left the house to Pederson. In the last year of his life, Dixon never brought up the subject of leaving Pederson the house.

D. *Probate Court's Ruling*

The trial court granted respondent's petition. In its written statement of decision, the court addressed the two main trial issues. First, the court found the Code of Civil Procedure sections 366.2 and 366.3 did not bar the petition. The court reasoned that section 366.3 "only applies where a claim arises from a promise or agreement with a decedent to make a distribution from an estate or trust." "Here, the Petition's claim isn't that decedent promised or agreed to transfer the property to the trust and didn't, but that he in fact did transfer the property to the trust, as indicated in the grant deed." "Likewise, Section 366.2 doesn't apply to this situation. By its own terms [section] 366.2 only applies where an action could have been brought on a 'liability of the person, whether arising in contract, tort, or otherwise . . . and the cause of action survives . . . .' Here, there was no cause of action on a liability of the decedent, whether in contract or otherwise. The decedent, Mr. Dixon, simply transferred his property to the Trust and the Petition seeks to give effect to that transfer."

As to the second trial issue of Dixon's intent, the court found that "from the time he created the Trust, Mr. Dixon intended his property to go to the University of Arizona Foundation. It was not necessary for him to record the deed making the transfer of the property to the trust valid and binding. The fact that years later he voiced a thought that he considered giving the property to a neighbor, but took no action in that regard, does not convince the court that the decedent's intent that the property go to the Trust, ever really changed." "Actions, however, speak louder than words or thoughts, and Dixon's execution of the grant deed shortly after being told by his financial advisor that he needed to make sure the house went to where he wanted it to go, is most persuasive."

## II

### DISCUSSION

Appellant contends the probate court erred as a matter of law in granting respondent's petition because: (1) Code of Civil Procedure section 366.3 applies to time-bar the petition; and (2) the grant deed did not validly transfer the house to the Trust because the transfer failed to comply with the procedures set forth in the trust instrument. We address each issue in turn.[2]

A. *The Petition is not Time-Barred*

Section 366.3 provides in pertinent part: "If a person has a claim that arises from a promise or agreement with a decedent to distribution from an estate or trust or under another instrument, whether the promise or agreement was made orally or in writing, an action to enforce the claim to distribution may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply." (Code Civ. Proc., § 366.3, subd. (a).) We review de novo whether section 366.3 applies in this case. (*Allen v. Stoddard* (2013) 212 Cal.App.4th 807, 811.)

_____

[2] Appellant does not challenge the probate court's ruling that section 366.2 did not apply.

6

Appellant contends the grant deed itself evidences "a promise or agreement with a decedent to distribution . . .under another instrument." Specifically, appellant argues that "[t]he signed grant deed at issue here is the only means the charity has to receive this property and is 'another instrument' under the terms of . . . section 366.3(a)," and "the subject grant deed transferring the property to the [Trust] is for the purpose of disbursement of the assets after Dixon's death." We disagree for two reasons. First, a grant deed is not the "additional instrument" contemplated by section 366.3 because it is not an "instrument" that works a "distribution." (See *Yeh v. Tai* (2017) 18 Cal.App.5th 953, 966 (*Yeh*) ["a promise of putting plaintiff on the title, even by deed, is not for the purpose of disbursement of assets after death under Code of Civil Procedure section 366.3"].) As the *Yeh* court explained: "Although a deed is 'another instrument' in general, Code of Civil Procedure section 366.3 contemplates a promise of 'distribution from an estate or trust or under another instrument . . . .' The 'instrument' referred to must be one that works a 'distribution.'" "Distribution," as used in probate law, refers to the "'disbursement of assets to heirs or beneficiaries.'" (*Ibid.*, quoting *Estate of Ziegler* (2010) 187 Cal.App.4th 1357, 1365 (*Ziegler*).) The grant deed here does not disburse the Property to heirs or beneficiaries, but merely transfers title of the Property during Dixon's lifetime.

Second, a decedent may distribute property to a charity without making any promise or agreement with the charity to do so. At trial, Krogmeier, the charity's representative, never testified that Dixon promised or agreed to transfer the house to the University. Indeed, Krogmeier was not aware of the grant deed until Dixon's death. Thus, there is no substantial evidence to support appellant's claim that decedent had a promise or agreement with the charity to distribute the Property to it. Without the requisite promise or agreement, section 366.3 does not apply. (See *Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 555 [section 366.3 "applies to *all* actions predicated on a decedent's promise to make specified distributions upon his death"].)

7

Appellant's reliance on *Ziegler*, *supra*, 187 Cal.App.4th 1357, is misplaced. There, the claimant Richard H. LaQue and his wife "provided food, care, and companionship to their neighbor, Paul Ziegler, when Ziegler was sick and alone. At first, they did so out of the goodness of their hearts. Eventually, however, a grateful Ziegler insisted on entering into a written agreement—the validity of which is unquestioned— that in consideration of continued care, LaQue would receive Ziegler's home upon Ziegler's death." (*Id.* at p. 1359.) After Ziegler died intestate, LaQue did not file any claim in connection with Ziegler's estate until about one year and three weeks had passed. (*Ibid*.) The appellate court concluded section 366.3 applied to bar the claim because Ziegler's written agreement "was a promise to transfer property upon death. It could be performed only after death, by the decedent's personal representative, by conveying property that otherwise belonged to the estate." (*Id.* at p. 1365.) Here, there is no evidence of a similar promise to convey property in exchange for any services. For example, although Dr. Pederson provided services to Dixon, the evidence merely showed Dixon thought about leaving the house to Pederson. There was no evidence he promised or agreed to do so. More important, as discussed above, there is no evidence Dixon promised or agreed to leave his house to anyone, even the University, who was the ultimate beneficiary of the Trust. *Ziegler* thus is inapposite. Section 366.3 does not apply.

B. *The Grant Deed Transferred the Property to the Trust*

Appellant argues the grant deed did not validly transfer the Property to the Trust because the transfer did not comply with the requirements of the Trust to add additional property to the Trust under Article XV of the trust instrument, as required by

8

sections 15401 and 15402. We independently interpret sections 15401 and 15402 and the language of the Trust. (*Cundall v. Mitchell-Clyde* (2020) 51 Cal.App.5th 571, 579.)[3]

Probate Code section 15401, subdivision (a) provides in pertinent part that: "A trust that is revocable by the settlor or any other person may be revoked in whole or in part by any of the following methods: [¶] (1) By compliance with any method of revocation provided in the trust instrument. [¶] (2) By a writing, other than a will, signed by the settlor or any other person holding the power of revocation and delivered to the trustee during the lifetime of the settlor or the person holding the power of revocation. If the trust instrument explicitly makes the method of revocation provided in the trust instrument the exclusive method of revocation, the trust may not be revoked pursuant to this paragraph." Probate Code section 15402 provides that, "Unless the trust instrument provides otherwise, if a trust is revocable by the settlor, the settlor may modify the trust by the procedure for revocation."

Sections 15401 and 15402 apply only to revocable trusts. As appellant acknowledges, the Trust at issue is expressly irrevocable. Appellant argues, however, that although stated to be irrevocable, the Trust is actually and legally a revocable trust because: (1) the trust document expressly allows the donor to change the charitable beneficiary by naming another qualified charitable organization to receive the remainder interest; (2) the trustee had limited power to amend the trust to ensure it qualifies and continues to qualify as a charitable remainder unitrust (CRUT) under the relevant provisions of the Internal Revenue Code; (3) the donor can name a successor trustee; and (4) the donor can make additional trust contributions. Appellant does not cite any

_____

[3] As appellant acknowledges, he did not expressly raise sections 15401 and 15402 below. However, appellant did raise the general claim that the grant deed did not validly comply with the requirements of the trust document to add additional contributions to the trust. Because the application of sections 15401 and 15402 presents a pure question of law and directly relates to appellant's general claim that compliance with the trust instrument is required, we will consider the argument.

9

authority to support his claim that these reserved powers render the Trust revocable. Likewise, we have not found any case that finds an expressly irrevocable trust is actually revocable because the donor or trustee had these reserved powers. We note, however, that in *Patton v. Sherwood* (2007) 152 Cal.App.4th 339, the appellate court described as "irrevocable" CRUTs, under whose terms the settlor "reserved the power to change the remainder beneficiaries, remove and replace trustees, receive and object to trust accountings, 'to bring a claim for breach of trust,' and petition for a court supervised accounting." (*Id.,* 152 Cal.App.4th at pp. 341 & 344.) We also note that "in order to qualify for favorable tax treatment, a CRUT must be irrevocable and is subject to rigid rules of operation." (*Lindquist v. Mack* (*In re Mack*) (Bankr. D. Minn. 2001) 269 B.R. 392, 394.) Finally, "a settlor's conduct after an irrevocable trust has been established will not alter the nature of such a trust." (*Laycock v. Hammer* (2006) 141 Cal.App.4th 25, 31.) Stated differently, appellant has not met his appellate burden to show the probate court's order was erroneous by persuading us that sections 15401 and 15402 apply to this case because the Trust is revocable.

We also reject appellant's underlying claim that additional contributions to the Trust can be made only where the additional contribution is listed in Schedule B and attached to the trust instrument. Article XV of the trust instrument provides:

> "A. <u>Additional Trust Contributions</u>. The term, Additional Trust Contributions, refers collectively to all property (whether real, personal or mixed, and whether community property or separate property) transferred by a Donor or any other person to the Trust, whether by inter vivos instrument or by will, other than the initial trust contribution. Additional Trust Contributions shall be described in a Schedule B attached to this Trust Agreement. All property transferred to the Trust pursuant to a Last Will and Testament of any person shall be deemed a single Additional Trust Contribution."

By its express terms, the requirement that "Additional Trust Contributions shall be described in a Schedule B and attached to this Trust Agreement" does not affect the validity of the transfer of property to the Trust because "Additional Trust Contributions" is defined as property "transferred . . . to the Trust . . . by inter vivos instrument or by will." Stated differently, the Property must already have been transferred to the Trust before it can be deemed an "Additional Trust Contribution" and trigger the mandatory reporting requirement of being described in a Schedule B and attached to the Trust instrument. The mandatory nature of the reporting requirement has many possible salutary purposes, including, to comply with the requirements of a CRUT under the Internal Revenue Code, to provide notice to a tax preparer to claim a deduction, or to ensure that all trust assets are accounted for and timely disbursed. However, the reporting requirement does not affect the validity of the Property transfer. In sum, appellant has not shown that as a matter of law the grant deed did not validly transfer the Property to the Trust.

## III

### DISPOSITION

The order is affirmed. Respondent is entitled to its costs on appeal.


DELANEY, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.

11