Filed 10/29/25  Uni-Glory Development v. Fairview East CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| UNI-GLORY DEVELOPMENT, INC., | B334626 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. EC066531 |
| v. | |
| FAIRVIEW EAST, LLC, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William A. Crowfoot, Judge. Affirmed.

Manasserian Law, Armen Manasserian; Ferguson Case Orr Paterson and Wendy C. Lascher for Defendant and Appellant.

Meylan Davitt Jain Arevian & Kim, Troy H. Slome, Grace C. Lee; Lexint Law Group and Robert Hsu for Plaintiff and Respondent.

_____

Plaintiff and respondent Uni-Glory Development, Inc. (Uni-Glory) and defendant and appellant Fairview East, LLC (Fairview) entered into a contract whereby Uni-Glory agreed to build condominiums on property Fairview owned. The relationship deteriorated and Fairview locked Uni-Glory out of the site before it could complete construction.

Uni-Glory sued to recover for its unpaid work. Fairview defended on the ground, among others, that Uni-Glory's recovery was barred under Business and Professions Code[1] section 7031, subdivision (a) for want of a valid contractor's license; and that, by the nature of their contract, Uni-Glory could not recover damages for work not performed after Fairview locked Uni-Glory out. The trial court resolved the latter issue against Fairview as a matter of law. The jury returned a verdict for Uni-Glory, finding it was validly licensed, and the trial court entered judgment accordingly.

For the reasons set forth herein, we affirm the judgment.

## BACKGROUND

### I. Facts[2]

Uni-Glory formed in 2005 to engage in the business of construction. Its owners are George Zhang and Lucy Gao, who are married. In Uni-Glory's statement of information filed with

---

[1] Undesignated statutory references are to the Business and Professions Code.

[2] We draw these facts from the record on appeal, including the trial testimony and the exhibits that were admitted and made part of the record. As Fairview does not challenge the sufficiency of the evidence, we recite the facts in the light most favorable to the judgment. (*People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3 (*Curl*).)

the Secretary of State, Zhang is listed as the chief executive officer, chief financial officer, and director; Gao is listed as the secretary. It lists no other officers or directors. At trial, Zhang testified he was Uni-Glory's only director.

Certified records of the Contractors State License Board (CSLB) reflect the CSLB had issued Uni-Glory a contractor's license, that from January 1, 2013 through March 19, 2018, Chien-Kuo Liu was Uni-Glory's "RMO," and Zhang and Gao were other "officers." The parties do not dispute that in this context, "RMO" means "responsible managing officer" as such term is used in section 7068, subdivision (b)(3). Liu was not an employee of Uni-Glory. Uni-Glory compensated Liu for his service as RMO by unconventional means: occasional cash, gift cards, and in-kind construction services.

The owner of Fairview is Tai On Ho. Ho formed Fairview to purchase land for development as a 10-unit condominium project in San Gabriel. Ho had no experience with such work and asked Zhang, who he had previously met by happenstance, to help.

After preliminary discussions, the parties entered into a written contract. The provision relevant to the disposition of this appeal is as follows: "[Uni-Glory] proposes to perform the work, subject to any additions and/or deductions pursuant to authorized change orders for the Total Sum of: $3,055,550 . . . Work Detail-1: $2,866,850 . . . , Work Detail-2: $188,700.00 . . . . [¶] Attachment A – [Uni-Glory] agrees to timely perform all tasks, listed in Attachment A, in a satisfactory manner. [Fairview] agrees to pay [Uni-Glory] the listed price for each task detailed in Attachment A."

Uni-Glory commenced work on the project in June 2013. Zhang was Ho's primary point of contact at Uni-Glory. Liu was

3

involved with the project, but Ho testified Zhang never advised him of this and Ho never saw Liu at the jobsite.

The project did not go smoothly. While under Uni-Glory's management, the project failed over 12 inspections. The parties' relationship soured. In 2015, Fairview's payments became inconsistent, and Ho stopped communicating with Zhang.

In January 2016, Fairview suspended disbursements to Uni-Glory on the project. Up to that point, Uni-Glory had received about $1.8 million for its work and the project was about 80 percent complete. On January 25, Fairview changed the locks on the gate to the worksite, denying Uni-Glory further access. Uni-Glory did no further work on the project and received no further payments.

The project was eventually completed, though not by Uni-Glory, and each of the 10 condominium units sold for an average price of about $1 million.

## II.    Procedural History

Uni-Glory sued Fairview in April 2017 for the unpaid balance on work it completed. Fairview cross-complained for disgorgement of all payments it made to Uni-Glory on the theory that Uni-Glory was not a licensed contractor (§ 7031, subd. (b)). Though the trial court dismissed this cause of action as barred by the statute of limitations, Fairview was allowed to assert the same theory as a defense to Uni-Glory's claims (§ 7031, subd. (a)).

Trial by jury began in July 2023. The jury found mostly in favor of Uni-Glory, awarding it nearly $800,000 in damages. It also returned, among others, the following special verdicts: (1) Uni-Glory held a general contractor license during the time it provided services to Fairview; (2) RMO Liu was "involved in

4

supervising" the construction; and (3) Uni-Glory fully performed under the contract and Fairview failed to perform.

Judgment entered. Fairview timely appealed.

## DISCUSSION

Fairview raises three issues on appeal, each of which it submits is purely legal. The first two pertain to Liu's qualification as Uni-Glory's RMO, and therefore the validity of its contractor's license. The third concerns the process by which the trial court construed the parties' contract as a lump-sum, rather than cost-plus, contract. We exercise independent review of these in turn. (*Int'l Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611 [application of the law to undisputed facts may be decided as a question of law].)

## I.     RMO Issues

To maintain a suit for compensation for work for which a contractor's license is required, a plaintiff must prove it was a duly licensed contractor when it performed the work. (§ 7031, subds. (a), (d), § 7068.1, subd. (d).)

A corporation qualifies for a contractor's license "by the appearance of a responsible managing officer [(RMO)] or responsible managing employee [(RME)] who is qualified for the same license classification as the classification being applied for." (§ 7068, subd. (b)(3); see also § 7065, subd. (c)(3) [corporation qualifies "upon the appearance of a qualifying individual appearing either as a[n] [RMO] or a[n] [RME] on behalf of the corporation"].)

Though section 7068 offers a definition of RME (see *id.,* subd. (c)(1)), it does not define RMO. It does impose some specific requirements for an RMO, however. As cited by Fairview, section 7068.1, subdivision (a) provides the RMO must "be

5

responsible for exercising supervision and control of their . . . principal's construction operations . . . ." For these purposes, " '[s]upervision and control' means direct supervision or control or monitoring and being available to assist others to whom direct supervision and control has been delegated." (*Id.*, subd. (c)(3).) " 'Direct supervision or control' means any of the following: [¶] (A) Supervising construction operations. [¶] (B) Managing construction activities by making technical and administrative decisions. [¶] (C) Checking jobs for proper workmanship. [¶] (D) Supervision on construction sites." (*Id.*, subd. (c)(4).) Cases also hold an RMO "must be a bona fide officer . . . of the corporation and must be actively engaged in the work covered by the license." (*Wright v. Issak* (2007) 149 Cal.App.4th 1116, 1123.)

## A. Fairview Fails to Show Liu Could Not Qualify as Uni-Glory's RMO as a Matter of Law

Fairview asserts Liu did not qualify as an RMO as a matter of law because he was not a corporate officer. Acknowledging the Business and Professions Code does not define "officer" for these purposes, Fairview directs us to Corporations Code section 312, which provides that corporations "shall have (1) a chairperson of the board . . . , (2) a secretary, (3) a chief financial officer, and (4) such other officers with such titles and duties as shall be stated in the bylaws or determined by the board . . . ." (*Id.*, subd. (a).)

Fairview then asserts "Uni-Glory presented no evidence that Liu fell into any of these categories. Uni-Glory made no showing that it even had bylaws, . . . and Uni-Glory did not have a board of directors to determine that the corporation would have an RMO." However, Zhang testified he was Uni-Glory's sole

6

director.[3] He also testified he asked Liu to be RMO and Liu agreed. In short, there is testimony that Uni-Glory's board—Zhang—determined to, and did, make Liu the RMO.

Fairview complains Uni-Glory did not present evidence of "any corporate action," particularly "by reference to minutes, resolutions, or by-laws." But Fairview's argument misses the mark. "[D]irectors of small corporations may transact their business by conversation and without formal votes. [Citations.] [This] rule is especially applicable in corporations where informality has become customary." (*American Center for Education, Inc. v. Cavnar* (1978) 80 Cal.App.3d 476, 490–491 (*Cavnar*), superseded by statute on another ground as stated in *Patton v. Sherwood* (2007) 152 Cal.App.4th 339, 346–347.) Informality was undoubtedly the custom at Uni-Glory. The requisite corporate action was therefore Zhang asking Liu to be Uni-Glory's RMO and Liu accepting. This action is corroborated by the identification of Liu as Uni-Glory's RMO on CSLB's verified certificate of licensure.

Fairview next argues Liu could not have been Uni-Glory's officer because he is not listed on its statement of information filed with the Secretary of State. Fairview's counsel below admitted there is no case law or statutory authority for this

---

[3] Though larger corporations must have more directors, a corporation with just one shareholder may have just one director. (Corp. Code, § 212.) The parties do not elaborate on how Zhang and Gao owned Uni-Glory shares. However, Gao testified at one point that she and her husband Zhang were "*the* shareholder" of Uni-Glory. (Italics added.) We accept this fact, which Fairview does not contest, in reviewing the issue Fairview frames as purely legal. (See *Curl*, *supra*, 46 Cal.4th at p. 342, fn. 3.)

7

proposition. Fairview presents no new authority on appeal. Instead, it offers a strained interpretation of a CSLB booklet—identified at trial as exhibit 149—that the trial court refused to admit into evidence. Fairview does not challenge that evidentiary ruling on appeal. We therefore will not consider the excluded evidence.[4] (See *Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 149, fn. 10.) In any event, we note the form statement of information Uni-Glory used and filed contains spaces only for those three officers it says a corporation *must* have. There is no place to note any other officers Corporations Code section 312 says a corporation *may* have. Thus, the absence of an optional officer from the statement of information is not probative of the existence or nonexistence of such an officer.

Finally, Fairview argues Uni-Glory produced no evidence that it met two requirements, one under section 7068.1, subdivision (d); the other under section 7071.9, subdivision (a). Fairview forfeited these issues by failing to raise them below. (*Nellie Gail Ranch Owners Assn v. McMullin* (2016) 4 Cal.App.5th 982, 997.) In any event, the arguments are meritless.

As a preliminary matter, the specific requirements Fairview says Uni-Glory had to satisfy did not exist when Liu was Uni-Glory's RMO. During the period at issue here, section 7068.1, subdivision (d) did not require that Uni-Glory file an "employment duty statement" and section 7071.9, subdivision (a) did not require that Liu post a $25,000 bond. The employment

---

[4]     We granted Fairview's application to direct the clerk of the trial court to transmit to our court the exhibit identified at trial as number 149. This does not change the fact that the trial court did not admit the exhibit.

duty statement requirement was introduced on January 1, 2022 (see Assem. Bill No. 830 (2021–2022 Reg. Sess.); Stats. 2021, ch. 376, § 6, eff. Jan. 1, 2022) and repealed before Fairview filed its opening brief (see Sen. Bill No. 1455 (2023–2024 Reg. Sess.); Stats. 2024, ch. 485, § 8, eff. Jan. 1, 2025). The $25,000 bond requirement was imposed in 2023. (See Sen. Bill No. 607 (2021–2022 Reg. Sess.); Stats. 2021, ch. 367, § 21.) In 2013, the required bond was only $12,500. (See Sen. Bill No. 392 (2009–2010 Reg. Sess.); Stats. 2010, ch. 698, § 16.)

In any event, the requirements imposed by those sections in 2013, when Liu became the RMO, were each conditions to the issuance of a contractor's license. (See § 7068.1, former subd. (d); Stats. 2013, ch. 180, § 1 ["[t]he [CSLB] *shall require* every applicant or licensee qualifying [through an RMO] to submit detailed information on the qualifying individual's duties and responsibilities for supervision and control of the applicant's construction operations" (italics added)]; § 7071.9, subd. (a) [RMO bond "*is required for the issuance . . .* of a license" (italics added)].) Since the CSLB issued Uni-Glory the license, a presumption arises that the CSLB in fact required Uni-Glory to submit the information it was required to. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."].)

## B. To the Extent It Shows Error in the Jury Instructions, Fairview Fails to Show Prejudice

Fairview argues the trial court erred in instructing the jury on the burdens of proof applicable to ascertaining Uni-Glory's license status. Specifically, Uni-Glory asserts the court erroneously told the jury that Uni-Glory's production of a verified certificate of licensure would satisfy its "burden of proof to establish [it] was validly licensed." This instruction, it argues,

9

allowed the jury to answer the second and all-important special verdict question—"[d]id Uni-Glory . . . hold a general contractor license from the [CSLB] during the time . . . it provided contractor services to Fairview"—without considering whether Liu was a sham RMO.

We need not consider whether the instruction was error because Fairview fails to demonstrate prejudice. (See *Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 132 [the appellant's burden to show prejudice by instructional error].)

" 'Instructional error in a civil case is prejudicial "where it seems probable" that the error "prejudicially affected the verdict." ' [Citation.] 'Actual prejudice must be assessed in the context of the individual trial record. . . . Thus, when deciding whether an error of instructional omission was prejudicial, the court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled.' " (*I.C. v. Compton Unified School Dist.* (2025) 108 Cal.App.5th 688, 702.)

Fairview makes only a conclusory assertion of prejudice without any discussion of the applicable legal standard. It says: "The harmful effect of the misinstruction is obvious; it was case-determinative. If Uni-Glory did not have a valid license because Liu was not an officer, did not file the required duty statement under . . . section 7068.1, subdivision (b) or the required bond, under section 7071.9, subdivision (a), Uni-Glory was not entitled to . . . recover any damages." In its reply, it puts a finer point on the nature of the purported error vis-à-vis Liu's status as an officer: "the jury instruction makes the same mistake the trial

10

court and Uni-Glory make: that a person may be an RMO without any corporate formalities."

Fairview's assertion of prejudice is wholly unpersuasive. As a matter of law, Uni-Glory never had any obligation to file a duty statement for Liu under section 7068.1 because that requirement did not exist when he was RMO. Likewise, there was no need to prove observance of "corporate formalities" in the context of a close corporation that routinely dispensed with them. (*Cavnar, supra*, 80 Cal.App.3d at pp. 490–491.)

Moreover, it does not seem probable the alleged error prejudicially affected the verdict. As to the newly argued statutory requirements, issuance of the license is prima facie evidence that Uni-Glory satisfied all preconditions to licensure, including those imposed under sections 7068.1 and 7071.9 in effect at the time. (Evid. Code, § 664.) In the absence of any evidence to the contrary, there was no basis for the jury to conclude the requirements were unmet. Further, while cases interpreting section 7031, subdivision (d) impose on the contractor the burden of proving the bona fides of the RMO or RME listed on its certified license (see, e.g., *Vascos Excavation Grp. LLC v. Gold* (2022) 87 Cal.App.5th 842, 851–852), Fairview cites no authority that the contractor must, in addition to its " 'verified certificate of licensure' " (*id.* at p. 851) also produce the full application that yielded the license. Had the Legislature so intended, it could have said so.

As to Liu's status as a bona fide RMO, the jury did not consider him a "sham" insofar as his performance of sufficient statutory duties is concerned. It specifically found he was "involved in supervising the construction at the 10-unit condominium project." (See § 7068.1, subd. (c)(4)(A).) This

11

suggests jurors believed Uni-Glory's evidence about Liu's role with the company and in the project, primarily established by Zhang and Liu, over Fairview's contrary evidence. We therefore do not think it reasonably probable that, if asked specifically about Liu's appointment, the jury would have rejected Zhang's testimony that he appointed Liu—i.e., as the sole director, he asked Liu to serve in the role and Liu accepted—to be Uni-Glory's RMO.

## II. The Trial Court Did Not Err in Determining the Contract Was a Lump-sum Contract Without Considering Fairview's Proffered Evidence

Fairview argues the trial court erred in determining the parties' contract was a "lump sum," rather than "cost-plus," agreement, without first provisionally admitting evidence that might have shown an ambiguity. We disagree.

Despite Fairview raising the issue for the first time on the eve of trial, the trial court entertained argument on the subject. After observing the contract language appeared unambiguous,[5] the court asked Fairview's counsel what evidence he would present to show an ambiguity: "Did you by any chance have a witness who is going to explain your view of [*sic*] this contract worked? Do you have an expert on construction contracts that is going to testify?" Fairview's counsel responded his proposed

---

[5] Again, the contract states "[Uni-Glory] proposes to perform the work, subject to any . . . change orders for the Total Sum of: $3,055,550," which is the sum of itemizations in two "work details." As the trial court noted, there is no provision in the agreement to modify the total cost, up or down, based on the actual cost of performing the itemized work.

witness was Ho, Fairview's owner, who "is going to testify that they—what's—you know, what was agreed to?"

On appeal, Fairview accuses the trial court of "arbitrar[ily] refus[ing] to consider *Fairview's understanding* of what it had agreed to" and offers specific evidence from Ho's testimony during the course of trial purportedly showing "that [*Ho*] *did not believe* the parties had made a lump sum contract." (Italics added.)

The trial court did not err by interpreting the contract without taking testimony from Ho. Fairview is correct that the analysis of whether an ambiguity exists is not limited to the words of the contract. (*Adams v. MHC Colony Park, L.P.* (2014) 224 Cal.App.4th 601, 620.) "Trial courts are required to receive provisionally any proffered parol evidence that is relevant to show whether the contractual language is reasonably susceptible to a particular meaning." (*Ibid.*, fn. omitted.) That relevance qualifier is important here. "Evidence is relevant if it concerns a party's outward manifestation or expression of intent. [Citation.] '[E]vidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language.' " (*Id.* at p. 620, fn. 18.) Therefore, the trial court was under no obligation to consider, even provisionally, what Ho "underst[ood]" or "believe[d]" the contract meant when the contract's words said something entirely different.

Finally, we acknowledge the trial court's comment—thrice quoted by Fairview—that the contract "could have been better written." Fairview's contrary implication notwithstanding, this comment does not conflict with the court's determination that the contract is unambiguous. (See *Alameda County Flood Control & Water Conservation Dist. v. Department of Water Resources* (2013)

13

213 Cal.App.4th 1163, 1179 ["Nor does the fact that language *could be* clearer make it ambiguous."].)

## DISPOSITION

The judgment is affirmed. Uni-Glory is entitled to its costs on appeal.


RICHARDSON, J.


WE CONCUR:


LUI, P. J.


CHAVEZ, J.